UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL MODLENAAR,

         Plaintiff,

       DECISION AND ORDER
-v-           07-CV-6012 CJS

C.O. LIBERATORE, SUPERINTENDENT JAMES
CONWAY, DEPUTY SUPERINTENDENT
R. JAMES, PHYSICIAN ASSISTANT MAGEE,
NURSE ADMINISTRATOR FRISBEE, and
INMATE RECORDS COORDINATOR
SANDRA PRUSAK,

         Defendants.
_____


APPEARANCES

For Plaintiff:    Michael Modlenaar, aka Michael Mondon, *pro se*
        2070 7th Avenue
        Apartment #10L
        New York, New York 10027


For Defendants:  J. Richard Benitez, Esq.
        Assistant Attorney General
        Office of the New York State Attorney General
        144 Exchange Boulevard, Suite 200
        Rochester, New York 14614


INTRODUCTION

  This is an action brought pursuant to 42 U.S.C. § 1983, in which Michael Modlenaar ("Plaintiff"), a former prison inmate, proceeding *pro se*, is suing various employees of the New York State Department of Correctional Services ("DOCS") who were employed at Attica Correctional Facility ("Attica"). Specifically, Plaintiff is suing Corrections Officer James Liberatore ("Liberatore"), Superintendent James Conway ("Conway"), Deputy Superintendent Randy James ("James"), Physician's Assistant Robert Magee ("Magee"),

Nurse Administrator Barbara Frisby ("Frisby"), sued as Barbara Frisbee, and Inmate Records Coordinator Sandra Prusak ("Prusak"). Now before the Court is Defendant's motion for judgment on the pleadings. (Docket No. [#13]). For the reasons that follow, the application is granted in part and denied in part.

BACKGROUND

The following facts are taken from the Complaint in this action. At all relevant times Plaintiff was housed in Attica's Special Housing Unit ("SHU"). On May 12, 2006, Plaintiff filed an inmate grievance against Liberatore, accusing him of harassment. On May 24, 2006, Liberatore delivered Plaintiff's breakfast tray. According to Plaintiff, Liberatore did not give him a styrofoam cup of hot water, which was usually included with breakfast. Later that day, Corrections Officer Gordon ("Gordon"), who is not a party to this action, collected Plaintiff's breakfast tray and utensils, and ordered Plaintiff to return a styrofoam cup. Plaintiff protested that he had not received a cup that morning. Gordon checked with Liberatore, who stated that he had provided Plaintiff with a cup. Consequently, Gordon issued Plaintiff a misbehavior report, charging Plaintiff with three infractions: contraband, refusing a direct order, and misusing state property.

In connection with the misbehavior report, Liberatore placed Plaintiff on a pre-hearing restricted diet, consisting of "loaf." (Complaint ¶ 26).[1] James approved the imposition of the

---

[1] New York State's administrative code addresses the imposition of restricted diets on inmates confined in SHU, in relevant part, as follows:

**Section 304.2. Food**

Inmates confined in the SHU will be provided meals of the same type as the meals available to inmates in general population and in sufficient quantity to be nutritionally adequate, except as provided in this section.

***

(b) Inmates may be placed on a restricted diet in accordance with the provisions of Chapter

2

restricted diet. In an inmate grievance that Plaintiff filed near the date of the incident, he stated that he was kept on the restricted diet for only three days. However, in the complaint in this action, Plaintiff alleges that the restricted diet lasted for six days. A medical document attached to the complaint appears to indicate that Plaintiff was on the restricted diet from May 24, 2006 through May 29, 2006. (Complaint, Exhibit B).

Plaintiff claims that he is Jewish, and that he was supposed to receive kosher meals. Plaintiff further maintains that Attica's facility food administrator informed him that kosher loaf was available. Plaintiff contends that Liberatore gave him non-kosher loaf, but Plaintiff refused to eat it because it was not kosher. Plaintiff asked Liberatore for kosher loaf, but Liberatore responded that there was no such thing as kosher loaf.

Magee gave medical approval for the restricted diet. On May 27, 2006, Plaintiff wrote to Frisby, and asked her whether the facility medical staff had received notice that he was being placed on a restricted diet. Frisby responded in the affirmative. Moreover, medical

---

V of this Title, for the following reasons:
\*\*\*
(3) refusing to obey a direct order at the time of meal distribution or refusing to obey a direct order to return a food container or utensil at the conclusion of a meal, while assigned to SHU;
\*\*\*
(c) The superintendent or his designee may issue a written order placing an inmate reported to have engaged in conduct described in subdivision (b) of this section on a restricted diet for no more than seven days pending the outcome of the inmate's superintendent's hearing. The order shall briefly state the reason(s) for the imposition of the restricted diet and contain the following notice to the inmate: "You may write to the deputy superintendent of security or his/her designee to make a statement as to the need for the continued pre-hearing imposition of the restricted diet." One copy of the order shall be given to the inmate and another copy forwarded to the commissioner within 24 hours of issuance.
\*\*\*
(e) The restricted diet must consist of a sufficient quantity of wholesome and nutritious food.

(f) Health services and food services shall be notified in advance of the imposition of a restricted diet. A physician, nurse or physician's assistant, designated by the facility health services director, must examine into the state of health of the inmate within 24 hours of the commencement of the restriction and daily thereafter during the period of restriction.
\*\*\*
7 NYCRR § 304.2 (2009).

3

staff monitored Plaintiff for "adverse effects of diet" each day that he was on the restricted diet. (Complaint, Exhibit B).

A Tier III disciplinary hearing concerning the misbehavior report was conducted between June 2, 2006 and June 7, 2006. During the hearing, at Plaintiff's request, a videotape ("the videotape") was produced, which depicted the area near his cell on the morning of May 24, 2006. At the conclusion of the hearing, the hearing officer found Plaintiff not guilty of the charges, purportedly because the staff member appointed to assist Plaintiff with the hearing provided inadequate assistance.

On June 7, 2006, Plaintiff filed an inmate grievance, complaining that due process rights had been violated. Plaintiff also alleged that he had been improperly placed on the restricted diet, in violation of his "constitutional rights."[2] In the grievance, Plaintiff asked permission to purchase a copy of the videotape. On June 23, 2006, Conway denied the grievance, stating that Plaintiff's constitutional rights were not violated, since the hearing officer found Plaintiff not guilty of the charges. Conway further stated that the pre-hearing restricted diet was "properly authorized." Finally, Conway informed Plaintiff that he could "request a copy of the video tape in question through [a Freedom of Information Law ("FOIL") request.]. Subsequently, Plaintiff asked Prusak for a copy of the videotape. Prusak responded that there was no record of a misbehavior report filed against Plaintiff on May 24, 2006, and that Plaintiff therefore could not have a copy of the videotape. Prusak further stated that Plaintiff could not purchase a copy of the tape in any event. Plaintiff appealed Conway's decision, and on August 23, 2006, the Central Officer Review

---

[2]In this action, Plaintiff alleges that he was placed on the restricted diet for six days. However, in his inmate grievance, he stated that he was on the restricted diet for only three days.

4

Committee ("CORC") "accepted [the appeal] in part," and informed Plaintiff that he could appeal the denial of his FOIL request to DOCS's Counsel's Office. Plaintiff appealed to DOCS's Counsel, who responded that the videotape in question had not been preserved.

Plaintiff subsequently commenced this action. Plaintiff alleges that Liberatore retaliated against him, in violation of the First Amendment, by setting him up for a false misbehavior report. Plaintiff further alleges that Liberatore violated his Fourteenth Amendment due process rights by placing him on a restricted diet, and violated his First Amendment religious rights by failing to provide him with a kosher diet. Plaintiff alleges that Frisby violated his Eighth Amendment rights by failing to conduct "an overall medical evaluation" before Plaintiff was placed on the restricted diet. Plaintiff also alleges that Magee violated his Eighth Amendment rights, by acting with deliberate indifference to Plaintiff's medical needs and approving the restricted diet. Plaintiff alleges that James violated his First Amendment religious rights when he approved the restricted diet. Plaintiff further alleges that James violated his Fourteenth Amendment due process rights by failing to investigate the incident. Plaintiff alleges that Conway violated Plaintiff's First Amendment religious and Fourteenth Amendment due process rights by "upholding the unlawful restricted diet," failing to investigate the incident, and "reversing the Grievance Committee's decision." Plaintiff alleges that Prusak violated his due process rights by failing to provide him with the videotape, in an attempt to cover up the Defendants' wrongdoing. The Court also construes the claim against Prusak as alleging a violation of Plaintiff's First Amendment right of access to the courts.

Defendants subsequently filed the subject motion for judgment on the pleadings. Defendants contend that the complaint fails to allege any constitutional violation.

5

Specifically, Defendants maintain that: 1) the restricted diet did not violate Plaintiff's Eighth Amendment rights because the diet was nutritionally adequate; 2) the restricted diet did not violate Plaintiff's religious rights, because the diet lasted only a few days and was therefore *de minimis*; 3) the restricted diet did not violate Plaintiff's due process rights, because DOCS regulations, and specifically, 7[3] NYCRR § 304.2(b)(3), provided for the imposition of a restricted diet.

DISCUSSION

In deciding a motion for judgment on the pleadings under FRCP 12(c), the Court must apply the same standard that applies to motions under FRCP 12(b)(6). *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009). That is, the Court must

> accept all factual allegations in the complaint as true and draw all reasonable inferences in Johnson's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007). To survive a Rule 12(c) motion, [the] "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, [173] L.Ed.2d [868] (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

*Id*. At 43-44. As to that,

> [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (citations omitted). In short, the facts alleged must "permit the court to infer more than the mere possibility of misconduct." *Id*. at 1950. "Legal

---

[3] Defendants incorrectly identify the regulation as "20 NYCRR § 304.2(b)(3)." (Defendants' Memo of Law [#14] at 5).

conclusions" need not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citation omitted). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

### First Amendment Retaliation

At the outset, Defendants' motion does not address Plaintiff's claim that Liberatore set him up to receive a false misbehavior report, in retaliation for the grievance that Plaintiff filed against Liberatore on May 12, 2006. On this issue, the filing of a false misbehavior report in retaliation for engaging in protected activity is actionable as retaliation. *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988). Accordingly, the retaliation claim against Liberatore may go forward.

### First Amendment Access to the Courts

With regard to the alleged failure to preserve the videotape, the Court construes the complaint as attempting to plead a claim against Prusak for denial of access to the courts.[4] *See, Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986) ("A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure.") (citations omitted). Specifically, it appears that Plaintiff wanted a

---

[4] The complaint does not state a claim against Conway for denial of access to the Courts, since Conway informed Plaintiff that he could request a copy of the videotape through a FOIL request.

7

copy of the videotape in order to pursue a legal claim against Liberatore for retaliation, since, according to Plaintiff, the videotape would show that Liberatore never gave Plaintiff a styrofoam cup on the morning of May 24, 2006.  Plaintiff alleges that Prusak prevented him from obtaining the videotape, to cover up Liberatore's actions.  Defendants' motion does not address the "denial of access to the courts" claim against Prusak, so the claim may proceed.  On the other hand, the complaint does not state a claim against Conway (or any other defendant) for denying access to the courts.  In that regard, Conway never denied a request by Plaintiff for the videotape, but instead, informed Plaintiff that he could obtain a copy of the tape through a FOIL request.  There is no allegation that Conway was responsible for the failure to preserve the tape.

*Free Exercise of Religion*

Plaintiff alleges that Defendants violated his right to religious freedom by serving him a non-kosher restricted diet.  It is well settled that the right to free exercise of religion includes "the right of prisoners to receive diets consistent with their religious scruples." *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975).  Defendants contend that the complaint fails to state a free exercise claim because the denial of kosher food was "reasonably related to legitimate penological interests." (Defendants' Memo of Law [#14] at 4).  However, Plaintiff alleges that Liberatore denied him kosher meals, even though kosher loaf was available.  Defendants have not identified any legitimate penological reason why Liberatore would have failed to provide Plaintiff with kosher loaf.

Defendants also contend that the six-day restricted diet was a *de minimis* injury that fails to rise to the level of a constitutional violation. *Id*. at 5.  However, the Court finds that at the pleading stage, Plaintiff's claim may go forward. *See*, *McEachin v. McGuinnis*, 357

F.3d 197, 201 (2d Cir. 2004) (In which the Second Circuit held that a seven-day deprivation of religious meals, could be actionable under the First Amendment.); *Wesley v. Alexander*, No. 99 CIV 2168(LAK), 2005 WL 1352593 at *10 (S.D.N.Y. Jun. 8, 2005) ("Defendant cites no legal authority-and we are aware of none-for the proposition that a plaintiff must prove that he missed a specified number of meals because of the violation of his religious precepts in order to press a free-exercise claim . . . ."); *but see, Tapp v. Stanley*, No. 04-CV-6400 CJS, 2008 WL 4934592 at *7 (W.D.N.Y. Nov. 17, 2008) ("[W]here a delay in providing an inmate with a religious diet is brief and caused by ordinary administrative delay, the inmate's religious rights are not violated.").

Plaintiff, though, has not alleged that he requested a kosher restricted diet from any defendant except Liberatore. Plaintiff alleges that he wrote letters to a Rabbi and a food service administrator concerning the restricted diet, and that he filed a grievance after the restricted diet ended, but there is no indication that any defendant beside Liberatore had notice that Plaintiff was being denied kosher meals while the restricted diet was in place. In other words, there is no allegation that any other defendant except Liberatore was personally involved in the denial of kosher meals. Accordingly, the free exercise claim is dismissed as against all defendants except Liberatore.

*Procedural Due Process*

Plaintiff alleges that being placed on a restricted diet violated his procedural due process rights.

> The law is well settled that to show a violation of his procedural due process rights, an inmate must establish interference with a protected liberty interest by satisfying a two-part test: (1) the confinement or restraint must create an "atypical and significant hardship in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418

> (1995); and (2) the state must have granted a liberty interest by statute or regulation to be free from that confinement or restraint. *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (citing *Sandin*, 515 U.S. at 484, 115 S.Ct. 2293).

*Bonet v. Khahaifa*, 512 F.Supp.2d 141, 142-143 (W.D.N.Y. 2007). Plaintiff's due process claims are based on the fact that he was placed on a restricted diet for a period of six days. Although Plaintiff contends that he refused to eat the loaf since it was not kosher, he does not allege that the restricted diet loaf was nutritionally inadequate or that it otherwise posed a risk to his health. Placement on a restricted prison diet for a period of six days, without an allegation that the diet endangered the inmate's health, is not sufficient to establish an "atypical and significant hardship." *Johnson v. Gummerson*, 198 F.3d 233, 1999 WL 822523 at *1 (Table) (2d Cir. Sep. 24, 1999) ("[T]he mere allegation of the imposition of a one-week dietary restriction, without an additional allegation that the restriction endangers the prisoner's health, does not demonstrate an "atypical and significant hardship" capable of satisfying *Sandin*."). Consequently, Plaintiff has not pleaded that he had a protected liberty interest, and the due process claims are dismissed.

### *Eighth Amendment Diet Claim*

Plaintiff also alleges that the restricted diet violated his Eighth Amendment right to be free from cruel and unusual punishment. However, the denial of kosher meals does not violate the Eighth Amendment. *See, Wesley v. Kalos*, No. 97 CIV. 1598(RWS), 1997 WL 767557 at *4 (S.D.N.Y. Dec. 11, 1997) (Denial of Halal food to Muslim inmate did not "rise to the level necessary to be deemed cruel and unusual under the Eighth Amendment."); *Perez v. Westchester County Dept. Of Corrections*, No. 05 Civ. 8120(RMB), 2007 WL

1288579 at *5 (S.D.N.Y. Apr. 30, 2007) (Denial of halal and kosher meat is not cruel and unusual punishment). Therefore, the Eighth Amendment diet claims are dismissed.

*Eighth Amendment Medical Claim*

Plaintiff alleges that by failing to conduct a medical evaluation prior to placing him on a restricted diet, Defendants violated his Eighth Amendment rights. The legal standards applicable to such claims are clear:

> In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.
>
> Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's serious illness or injury resulting in the infliction of unnecessary pain and suffering. Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir.2003) (citations and internal quotations omitted).

Here, Plaintiff does not allege that he had any medical condition which would have made it unsafe for him to be placed on a restricted diet. Accordingly, the Eighth Amendment medical claim is dismissed.

11

*Qualified Immunity*

As a final matter, Defendants have thrown in a one-sentence request to dismiss, based on qualified immunity. The request is denied since Liberatore and Prusak, the only defendants remaining in this action, have not shown that they are entitled to qualified immunity.

CONCLUSION

Defendants' motion (Docket No. [#13]) is granted in part and denied in part. Defendants are granted judgment on the pleadings with regard to all claims except the following: 1) First Amendment retaliation claim against Liberatore; 2) First Amendment free-exercise claim against Liberatore; and 3) First Amendment access-to-the courts claim against Prusak. The action is dismissed as against Conway, James, Magee and Frisby. The parties are directed to inform the Court in writing, within thirty days of the date of this Decision and Order, whether this action is ready for trial.

SO ORDERED.

Dated:      July 21, 2009
               Rochester, New York

                                          /s/ Charles J. Siragusa
                                         CHARLES J. SIRAGUSA
                                         United States District Judge